### BRESLIN v. GOLDSTONE.

(Supreme Court, Appellate Term, First Department. December 11, 1913.)

SALES (§ 417*)—CONTRACT—BREACH—DAMAGES.

Evidence *held* to require a finding that defendant purchased certain goods from plaintiff, paid part of the price in advance, and that the goods were not delivered, so that he was entitled to damages for plaintiff's breach of contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1173; Dec. Dig. § 417.*]

Appeal from City Court of New York, Trial Term.

Action by Bernard Breslin against Philip N. Goldstone. From a judgment in favor of plaintiff for $633.18, and from an order denying defendant's motion to set aside the verdict and for a new trial, he appeals. Reversed, and new trial ordered.

Argued November term, 1913, before LEHMAN, PAGE, and WHITAKER, JJ.

Bernard H. Arnold, of New York City, for appellant.

Samuel S. Breslin, of New York City, for respondent.

PAGE, J. This is an action for the agreed price and reasonable value of dry goods sold by the plaintiff to the defendant. The plaintiff claims to have sold goods to the amount of $2,139.61 to the defendant, admits having received on account thereof $1,500, and allows a discount of $90. The defendant concedes that the goods were delivered, and that he has not paid for them, but alleges as a counterclaim that the plaintiff sold to him 14,175 yards of silk at 42½ cents per yard, and received the aforesaid $1,500 in part payment in advance for these goods, and that the plaintiff failed and refused to deliver them, to his damage in the sum of $2,917.50.

Upon the trial it was not disputed that after the plaintiff had sold and delivered the goods, for the price of which he is suing, to the defendant, and before the bills for them were due from the defendant, the plaintiff called upon the defendant and requested him to discount some of the bills, because he needed money to pay for other goods which he had bought or intended to buy, and that the defendant refused to discount the bills, but told him to call later with samples of his new goods. The defendant claims that at this second meeting the plaintiff told him he had bought these goods very cheaply "at a failure," and had to pay for them at once, and they agreed that the plaintiff should sell them to the defendant for what he was paying for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

them, 42½ cents per yard plus a profit of $250 allowed to the plaintiff on the transaction, and that the defendant should pay to the plaintiff $2,000 on the delivery of the goods, $1,000 within ten days, and the balance within 30 days. The defendant testified, further, that on October 30, 1912, the day fixed for delivery of the goods, the plaintiff called again to see the defendant and requested him to pay the $2,000 before delivery, because he was short of money and could not pay for them; that the defendant paid $1,000 on account and took the receipt which was placed in evidence; that on the 31st of October the plaintiff again came in and said he needed $500 more, and if the defendant would let him have it the goods would be delivered in a few hours. The defendant gave him the $500, but the goods were not delivered, and never have been delivered, though the plaintiff held the defendant off on promises for several days afterward. In corroboration of his version of the transaction, the defendant produced and placed in evidence a receipt signed by the plaintiff, and of which the plaintiff had and produced a copy, which read:

"New York, October 30, 1912.

"Received from Ph. N. Goldstone one thousand dollars ($1,000) in advance for merchandise bought, and which I, Bernard Breslin, agree to deliver these goods to-day or to-morrow.                B. Breslin."

The plaintiff's explanation of this receipt is very weak. He admits that he called with his samples and asked the defendant to advance him money at a time when no money was actually due to him from the defendant, and that he was dickering with the defendant as to whether he should sell the goods shown by sample at 60 cents or 65 cents per yard. Then he says the defendant (without apparent cause) went into the other room and made out a check for $1,000 and the receipt worded as above, and that he asked the defendant, "What goods do you want me to deliver to-day or to-morrow, because I have not bought the goods, and you have not bought from me the goods?" and that the defendant replied, "All right; if you do not buy the goods, then I have nothing against you, and there will be nothing to it." It is most improbable that the plaintiff, an apparently shrewd business man, would accept $1,000 and sign a written agreement to deliver goods to-day or to-morrow, and be contented with his opponent's mere verbal statement that it would be all right if he did not keep his agreement. The documentary evidence above quoted remains practically undisputed and so strongly corroborates the defendant's story that it overwhelmingly throws the weight of evidence in favor of the defendant. The fact that the defendant's bookkeeper wrote the price of the goods on this receipt after it was signed is negligible, and does not discredit the receipt, since the plaintiff was given a copy of it in its original state and admits that it was so worded and signed.

The plaintiff and his witnesses have testified that the market value of the goods at the time of the sale was in the neighborhood of 60 cents a yard. The defendant's damage was therefore clearly shown. The verdict was clearly against the weight of evidence in finding against the defendant upon his counterclaim.

The judgment appealed from must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.